Take number 14-5295, United States of America v. Clifford Leon Houston, argument number 315-5, and Mr. Whelan to the accountant. Morning. Please record I'm Mike Whelan from the Tennessee Bar. I represent Clifford Houston. I did not represent him at trial. As you know, one of our issues is he was forced to go to this second trial on his own. In 2006, Mr. Houston and his brother Rocky were sitting in their rural property in Roan County when they had an encounter with a deputy and an armed ride-along. And it did not come out well for the deputy and the armed ride-along. They were killed. The Houston brothers were charged with capital murder and went to trial and won. They were acquitted. Now, that's not part of this case. We're not taking that into consideration. But that's why they put a poll camera on their property to see if Rocky was carrying a gun years later. They see Rocky carrying a gun. They get a warrant to go to the property. They go to the property. Leon Houston comes across from his home on the property to see what's going on with Rocky. And according to the police, this paranoid, law enforcement-hating fellow from Roan County then confessed to smoking marijuana and possessing a firearm at the same time. So they arrested him for being an addict with a firearm. And then they took him to court, detained him, put him into Blount County Jail and held him there pending the first trial. And I've referred to those as the first trial and the second trial. The first trial was a possession of a weapon by a drug user. While he was in the Blount County Jail, the lawyer who represented him on the capital case and got him acquitted, had some more than a year or so before seized the property with liens that he got as his fee in the capital case. He was never paid the money, so he executed on the liens. During the time Mr. Houston was in jail, word got out that Mr. Logan, the lawyer, was going to the property and was going to take down some signs that you have seen were mentioned throughout the sentencing hearing where the Houston brothers talked about their thoughts on law enforcement and government and certain government officials including judges and police officers. He called his girlfriend in Roane County, from the Blount County Jail to the Roane County Jail, just across the county line. So what are you teeing up? Excuse me? What are you teeing up right now? Well, what I am teeing up is he did not make a call in Interstate Commerce. He called from Blount County to Roane County. The reason that we're here, the connection, as was talked about in the last case, is that when you make a call from the Blount County Jail, because the Blount County Jail has a contract with a company in Louisiana, that message goes to Louisiana and says, does he have any money in his account? Yes. Okay. Then it comes back and the phone call is connected. Isn't that a better argument for the Supreme Court than for us? It may be. It is merely that part of the argument. And it's also part of the argument that this is not a true threat. Because he's not talking to Jim Logan. He's not talking to Jim Logan's office. He's not talking to anybody connected to Jim Logan. As this court has said, the true threat statute, the 1875C, would be better if it required a threat be made to the person who it was intended for or someone close to them. Does the statute require that? It does not require. Okay. That's just what this court has said about the statute. It would be better. It might be a stronger case if he made the threat to the face of the victim, but it's not required. No. But for it to be a true threat, and we'll talk about the aloneness case, but we had the exact same jury instruction. What a reasonable person would believe, the negligence standard that the Supreme Court says cannot fly under 1875C. We have an 1875C accusation and conviction with the same negligence standard. What happened when he made that phone call? His girlfriend, he's telling her, you can tell my family they've got a right to choose. Let me ask you a question. If we decide there's not a forfeiture plain air problem and you are correct on aloneness, in other words, the negligence instruction was wrong and it's not harmless and so forth and so on, are any of your other appellate arguments? I mean, I realize if you win, you'd like to push sufficiency because if you win it, that's double jeopardy and the game's up. So I realize why one might try to do that. But other than that point, everything else goes away, right? You get the convictions vacated, the sentences vacated, and you're back to square one. Your client's back to square one. So that seems to me, unless you really have a chance of winning under the old law, which I personally don't think you do, isn't that where we should be talking because that's a pretty good argument for you? It is a very good argument for us. The question is, I'm not sure what the Supreme Court did with aloneness. It appears to me they remanded it to a person. That may help you, right? I mean, because the one thing we know for sure they did is they rejected this instruction. There's no argument that the instruction that was used to convict your client was accurate. Supreme Court case law, so that establishes the first prong of plain air. There was air. The second prong, plainness, is evaluated at the time of the appeal. So it's plainly wrong after aloneness. So you're on second base at this point. And now we have what are prongs three and four mean. And, you know, this is helpful to you and potentially hurtful to the government. But one of the things that's interesting to me about the setting of this case is, in aloneness itself, this statutory interpretation argument was not reached. I don't even know if it was argued, but it certainly wasn't reached by the Third Circuit because the Supreme Court had to add the statutory interpretation question after cert was granted. It was the U.S. Supreme Court that injected that issue into that case. It seems a little funny and arbitrary to your client not to let a court inject that issue into your client's case. So just to be clear, this is a helpful question to you. If you want to disagree with me, you can. But I think it's a helpful question, and the government should have an answer to it. I don't disagree at all. I think that was a First Amendment argument that went up with aloneness, and then they asked. It was a First Amendment argument that was addressed in the Third Circuit. When they granted cert, they added the statutory interpretation question. Yes, sir. The issue here, I think that Mr. Houston raised that issue at the trial level. How did he do that? Well, when they had a jury conference. And again, I think this goes back to that first issue, which is his right to counsel. He has a trial 10 days before with elbow counsel. Wait. I'm interested in these other explanations. But tell me, support the statement you just said. He did challenge the instruction. Where is that, and how did he say it? I know he's pro se, so. He went, at the jury instructions, at the jury conference, as it was with his pro se defendant, he asked the judge, he says, I've got to make a knowing and willful sending in interstate commerce a true threat, arguing that this should apply to knowingly sending it in interstate commerce. Yeah, that's a different point. That's state of mind as to the interstate commerce issue, not as to the knowingness as to whether this was threatening to somebody else. Well, he says that's a knowingly sending interstate commerce a true threat. That's at record 294, page ID 2633. So he's talking about all of it. Because the statute, I think the thing that the Supreme Court doesn't say in aloneness is, the statute says three things. It says you've got to apply this knowing. At that point, by the way, he doesn't have standby counsel? He is not represented by counsel. Ten days after his first trial, the judge determined at the second trial it was not necessary for him to have elbow counsel. The only difference being he won the first trial. So here he is arguing this without any education, without any knowledge, doing the best he can, and at no point did the government stand up at the second trial and say, Judge, you ought to leave his elbow counsel in. He might need some assistance. So he's by himself at that point, and he raises the issue. And the jury comes back with a question. It says why doesn't the government have to prove he knowingly sent a threat in interstate commerce? So he's asking for it. What aloneness doesn't say about 875C, they say, okay, since there's no mens rea, we have to find one, and this instruction is a negligent standard and we don't assume negligence in a criminal statute, and we determine that it must not only apply to communication because communication itself is not illegal, it must also apply to the threat. I think they missed that it must also apply to intent to put in interstate commerce because that's one of the elements of the statute too. They only dealt with basically the two. They said there's communication. But you don't have to go there, do you? No, under aloneness, Judge White, I'm just trying to say this. I have had the experience before where I thought I might win on an issue and found out I was not correct. And so I want to make sure we touch on these other bases. I get that point entirely as a former appellate advocate, but a recommendation is do everything you can to try to win on the issue you think you're going to win on. All you've done so far is show you think you're going to win on it. You're not arguing it. You may prove yourself right. I don't know. Honestly, the problem with arguing aloneness is my first impression on reading the case law and filing the notice of supplemental authority and the letter brief was just to write aloneness in big type on the page and say that's it. What's so confusing about it? What they did was they reversed our standard of a reasonable person and held there must be a subjective intent for the threat. I think that's the holding of the case. Yes, sir. And that's the error in your case. And the issue that's important for me anyway is whether this is plain error. And you have the burden to establish to us that your substantial rights were affected to the effect that there's doubt that the jury, if we set this back for a retrial, that the jury might rule in favor of you, your client, on the subjective intent. And I listened to the tape. I've listened to the threat. And I would say generally issues of intent are for the trier of fact, for the jury. That's the normal rule. But there are exceptions. And the exception is if a reasonable juror could not so rule, it is the function of the judge, the trial judge or the appellate judge, not to let that issue go to the jury if reasonable jurors could not so rule. I listened to that tape. And I don't think you could have a clear tape where this guy says I mean it, you can tell everybody that I'm going to kill this guy when I get out of prison and I repeat it and I want everybody to know it. Tell me how you could win on subjective intent if we were to have a new trial on this based upon what we see in the record here. Because one of the things that this court and other courts have said about intent on these threats is that the threat is a tool intended to be used to accomplish a purpose through intimidation. It can't be a tool intended to accomplish a purpose through intimidation if the individual Does it have to be? That's what this court has said over and over again. If this is what you look at as to whether or not this is a threat. Is it a special element of the statute? Well, it is because it's threat. And what this court has been saying in those cases is defining threat. Intimidation is normally a purpose of a threat, but I don't know if it's got to be the sole purpose. And I would tell you, Judge, if you look at it alone, if you look at the facts there, it was a much more egregious kind of he's threatening everybody in the world and putting it on Facebook. All right. I just want to focus on the element. The ruling in Lonis is that you have to have a subjective intent to threaten. Why is this not a subjective intent to threaten? Because that's what the point I'm trying to make about the threat. And this court's dealing with the word threat and saying it has to have a purpose. What Mr. Logan testified to was he had established his right to that property more than a year before. So if Mr. Houston is making a threat in order to get him away from his property, it's no longer his property. It now belongs to Mr. Logan. And so it cannot be a tool through which he can use for a purpose. You concede to me that he intended himself to threaten his attorney. Well, I will concede to you that he's a tortured individual who'd been locked in jail for a while and had just for a charge he would be acquitted of as well as the one he was acquitted of in the murder case. He is ranting. The officer was allowed to testify. Ranting is something else. Ranting is maybe I didn't intend that my words said what they appeared to have said. And that's the difference between a reasonable person's standard and subjective, is that the words out there could have been interpreted not how I intended them. Here, how could they be interpreted anyway other than, well, how did he not intend what he said? What this court has said is that there also has to be some indication that he knows he has some ability to carry out the threat. He's locked in a jail cell. You basically don't have an answer to my question. And if you don't, I don't see any reason to have a new trial on this. But just out of curiosity, you used the word rant. And why is an irrational ranting a potential explanation here? Well, because it goes against what this court has said a threat means. Again, I'm trying to help you. I'm trying to help you. Why isn't potential the possibility that he's irrationally ranting all that was happening, right? I mean, we know it's not a threat when it's a joke. And I thought you were making the point, and I thought Judge Griffin was agreeing, that ranting by itself is usually not going to be a threat. And isn't that an independent point from whether you have the ability to actually carry out something? Well, I may be thick, but what I'm looking at on this idea that a threat must be a tool used for a purpose, if he's just ranting, that's not a threat. And the court allowed this jailer to say, who just happened to hear Mr. Houston as he's scanning through the jail cells, making the same kind of statement to himself locked in a jail cell some couple of days before. And we argue that was error to come in, but he's clearly ranting. The judge at sentencing remarks on how he clearly has mental health issues. Okay, so you do agree that a reasonable jury could conclude that he was just ranting? I believe so, yes. And I believe that was the... And that's one reason why you would be entitled to a new trial under Elonis. Yes, and that's why when I raised that point, originally it was to say when he's talking to his girlfriend on the phone, she's saying, now Leon, you know that's not going to happen. So here's a reasonable person. It's not going to happen. You know... He wants it to happen, and he's serious, and I'm not joking. I mean, tell me, if your argument is he's ranting, what's your definition of ranting? Well, for one... He sounds very serious to me. For one, if I'm locked in a jail cell and I'm walking around repeating things to myself, that's pretty much all right. That's not what he's, I mean, come on. Well, that's not the case. Rants are made from jail cells all the time. I wouldn't push this point too hard. He's saying the same thing later in the recorded phone call. Didn't he threaten to kill him the day before, too? There's a couple of days before he's ranting in the jail cell by himself. Then he's on the phone. Okay. Those are the only two that I'm aware of. All right. We're supposed to say he really didn't intend what he's saying. And a reasonable juror could conclude he didn't really intend what his words said, even though he repeated them over and over again. And he said, tell everybody else, and I really mean it, and I'm really serious. And, I mean, is there anything in the tone of his voice that says he's not serious? Anything? No, but I would refer you again to the sentencing hearing, at which the judge is referring to his irrational acts during the first trial. Okay, that's another issue. If he is irrational, if he's not mentally capable, I guess, but I don't see that as an issue either. One thing I think you have to come to grips with, which I think does support Judge Griffin's line of questioning, is the Supreme Court did not tell us exactly what the intent standard was. And if that standard is recklessness, which is the lowest thing left that is eligible because we know negligence doesn't work, I assume you agree the case does start to look close to harmlessness or not a prong three of the harm, a plein air standard, right? Because this does look pretty darn reckless. Given that we don't know what that standard is, then yes, I think that's true. Well, it's probably the model penal code. I mean, that's where that came from. I think that was what innovated that. But in aloneness, you've got a fellow who posts things on Facebook where everyone can see it. Here you've got one guy talking on the phone from the jail to his girlfriend who doesn't buy it. She's not finding this to be a real threat. She's saying none of that's going to happen. You know it's not going to happen. So I think aloneness is the much more egregious threat if you look at it. They didn't address harmlessness or, well, I mean the majority didn't address harmlessness or for that matter plein air. Right. So it doesn't help us any. And they also didn't address the threat. They said you've got the wrong standard in the instruction. And here we've got Mr. Houston doing the best he can to challenge the instruction, and we've got a jury coming back saying why doesn't the government have to prove and what are they told? Refer to the instructions. We'll give you your full rebuttal, and let's hear from the government and see if we can find our way through this. Good morning. David Jennings representing the United States, and I represented the government below. I'll take issue with a couple of things Mr. Whelan said. I will disagree we're dealing with a tortured soul who's rotting away in a jail cell. We're dealing with a dangerous man with an agenda, and any time he is in a confrontational setting or in any setting with a person of authority, it will most likely turn confrontational and loud. And we saw that through the entirety of this case. And Mr. Whelan makes a lot. Let's start with his point, Mr. Whelan's point that he was pro se, and he did talk about knowingness with respect to interstate commerce, that element, but then that same sentence included the true threat point. And given the liberality of how you review what pro ses do, why can't we say it was preserved? First of all, you need to understand why Mr. Houston was pro se. But we get all that. I mean, you can say all you want on that. I just don't know how it's going to help us resolve the key Alanis point. Well, I think the key here is what has been touched on. Has this error been forfeited because it was not raised below and was not preserved? I'm just making the point that I assume you agree with me that the standard for forfeiture is a little different with counseled criminal defendants than it is for pro se criminal defendants. I thought that was pretty block letter law. Yes, sir. Okay, so that's all. I'm just saying given that liberality of construing what's happened, is that even remotely fair? I mean, you can say it's not. I'm just curious what your answer to that is. I mean, I can't argue with the black letter law. Well, how about the sentence? The sentence that he quotes at the appropriate time in the trial. Asking about a jury instruction. Right. I mean, I have to say my first reading of it was he was only talking about the knowingness with respect to the interstate commerce. But when he reads it to me, I realize it has a second clause. I don't hear that. And the second clause is about true threat. No, the second question is whether it was a true threat. Not what he meant it to be, but whether it was a true threat. His jury instruction question, if you want to give it two prongs, one is, I didn't know I was transmitting it in interstate commerce. His argument being, I'm calling from Blount County to Roan County. And his second jury instruction was, tell him it's got to be a true threat. That's black letter law. It does have to be a true threat. Well, a true threat was what a reasonable person would perceive it to be. And that's what our law was. We are here now post-Alanis, and we have to figure out what to do about this case. There was a circuit split on the issue, wasn't there? Wasn't the Ninth Circuit? Two circuits. Had the subjective. I mean, so this is not an issue that wasn't out there, even though our law in the Sixth Circuit was clear that we were going on the reasonable person. A person still, he's not anticipating a circuit split. There is a circuit split. And I think there is an obligation to raise issues, particularly when the split is already out there. But anyway, you still go back to plain error here. You do. I think that's the crux of the case. And tell me why he hasn't established a right to a new trial under plain error review. Because he can't meet the third prong of showing that his substantial rights were affected. And here's why. And I'm glad you've listened to the recording, and I hope both of you will if you haven't, because you've got it right. I can't imagine a threat that is perceived as more serious than this. Listening to the tone of his voice and the way he says it, repeats it, and you tell everybody that I really mean it. I mean, if you were going to write up something that was subjectively intended, I don't think you could write a stronger case. I agree. And that's why first when I came in here I said, well, intent's usually an issue for the jury, so we'd probably have to remand it. But once I listened to that, I said, my gosh. And I want to address two things that he said about what's in that recording. He says at one point the girlfriend, Pat Honeycutt, doesn't take him seriously when she says, well, you know they're not going to do that. What he had just said is, you go tell my family. If he comes down there, shoot him on sight. And she says, you know they're not going to do that. She's talking about the family that he's wanting her to tell to kill Logan if Logan shows up on that farm property. The other point being that she didn't take him seriously. At one point she said to him something to the effect, I'm paraphrasing, you better shut up or they're going to play this for you again. Talking about us, law enforcement. She's recognizing you better shut up. You're on a recorded phone call making a threat. You must agree that normally in a criminal case of all things, intent is just the classic jury question. It is. And we know from Elanis. Tell me, I know in your letter brief you say we should adopt the recklessness standard. I happen to agree with you that if we do adopt it, I think your argument gets a lot better. Because it's really hard for me to see how you could look at this and not call it reckless. But that's not my question. My question is why should we be doing this now? We just had a Supreme Court case where they decided not to resolve the issue. Normally we're courts of review as opposed to deciding things in the first instance. I guess I'm just not sure I understand why you don't vacate the conviction, you send it back, let the district court decide whether recklessness or a higher standard applies, and then depending on what happens, if there's not an acquittal, which you seem to have ample confidence there would not be an acquittal, it will be back in front of us in terms of the standard. Well, I would say that Elanis tells us that we should adopt the recklessness standard. You don't mean that. Well, it's the lowest standard above what the court said cannot stand, which is the negligence standard or the reasonable person standard. So there's three left after Elanis, purpose, knowing, and reckless. The majority opinion doesn't favor. No, the majority opinion doesn't favor the reckless standard. It says, quoting Carver, the next highest, which you pointed out, would be recklessness. And then, of course, there's knowing and purpose. And the Supreme Court clearly said knowing and purpose would suffice under an 875C prosecution. It did not answer the question on the recklessness standard. Justice Alito said in his opinion that what should have been done was to address what the standard should be, but the Supreme Court did not do it. And it is confusing as to what the Supreme Court did. On the one hand, they say this conviction cannot stand, but on the other hand, they did not reverse and remand for a new trial. They remanded it to the Third Circuit. Which will probably send it right back to the district court. Most likely. Then why shouldn't we do the same thing here? Because, as I argued in my letter brief, under any of those three standards, any rational jury, after listening to this recording, is going to find the subjective intent that we're talking about. We don't remand for futile exercises. And we don't remand to do a whole do-over again if there is not reversible error here. And my argument is that there's harmless error here because under any of those three— I can see this man representing himself again on a retrial. I mean, it's no small task to redo this trial. It's not going to be the easiest thing to do. And we shouldn't reverse a conviction unless the appellant has established grounds to reverse his conviction. And it's his burden under plain error to establish that his substantial rights were compromised, which is different than harmless error where the government has the burden. Right. But if we were to find that this is harmless beyond a reasonable doubt, well, certainly there is not plain error. If we were to find under the more stringent standard of harmless error, then there certainly is not plain error here. So that's where I'm coming from on this. And that's exactly how I see it. So you don't think it makes a difference whether the argument was preserved and we're now in harmless error where you have the burden, or whether the argument was not preserved and we're in plain error. You just don't see it making a difference who has the burden. Well, harmless error is when there is an objection, and there was no objection. So, I mean, I think there's no question there's forfeiture here. So we drop down to plain error, which is much tougher for the defendant here. And my basic point. Can I ask you just a funny feature of this that I had not thought about? I mean, because I just don't think I'd seen this fact pattern before. How odd it is the difference between having counsel and not having counsel. So if he had counsel, I think the odds are high this argument would not have been preserved. You and Judge Griffin, by the way, are wrong. There was no circuit split on this issue. There was a circuit split on the constitutional question. There wasn't a circuit split on the statutory interpretation question, which is what Alanis decided. So that's the unpreserved error. There was no split on it. There was no majority opinion anywhere that did it, and the Third Circuit didn't even address it. So what's funny about this case is he had, had he had counsel, he would have had a pretty good argument on a 2255 about saying, what was my counsel thinking? And then you have the two-step standard. All you've got to do is show prejudice. When you go pro se, you can't sue yourself and say I'm an idiot and get a 2255. So it just seems very funny that the pro se is worse off than the counseled person. Now, you could say that's just evidence number seven as to why it's a bad idea to go pro se, but it seems very odd to me that that's how it works out. I am right. That's how it works out, right? I agree with you. It is odd. But it is another reason not to go pro se. But I agree with you. I don't believe that this would have been raised and preserved if he had counsel because Jeffries was the law of the circuit. Right. But Henderson says that we look at the law on appeal. I mean, I think that's given. So I don't think that's really the issue. How far can the court go in omitting elements and still have this sort of analysis that says, well, the jury would have found that and the jury would have found that? The Supreme Court case of Nader, harmless error was found where materiality of a false statement in a tax fraud case was omitted. That was the holding of Nader in Osborne, a Sixth Circuit case. We found harmless error where elements had been misstated. Right. I think this was a drug count. Overwhelming, and there's no reasonable possibility the jury would have come out the other way, even if they had been properly instructed. We do that frequently. And quite frankly, having been involved in the Jeffries trial and followed it closely on appeal, I'm surprised that the Supreme Court didn't. What is it about Tennessee and these threats? What is it about me? You're the only state that seems to be doing this. How did I draw these two lightning bolts, Franklin Delano Jeffries and Leon Houston? But quite frankly, my point was going to be, I was surprised because Jeffries was well counseled below. He preserved all of his issues, and I was frankly surprised the Supreme Court didn't take it and address the mens rea issue in that case, but they didn't. And they waited for Alanis, which is factually, I mean, you're talking social media in both cases. Of course, we're far from that, and I think we've clearly established there's no interstate nexus issue here, and there's no First Amendment issue here. Is this a true threat, and what mens rea was required, and what would a jury have done however they were instructed? And again, I believe under any of those standards, he would have been convicted, but we're asking this court to establish recklessness for the guidance for the courts below. No more questions? Thank you. Thanks very much. Mr. Whalen. Just a couple of things that the court just talked about with Mr. Jennings. The idea of how many elements can we ignore? I assume some of our folks in the gallery are law students, and if it didn't give them a chill to hear that you can skip some elements, I don't know what would. That's frightening to me. It's not skipping. I mean, you've got to be fair about it. I mean, it's deciding that on these facts, there's no way it would have come out differently. That's not skipping. Well, what the Supreme Court said was that one of the elements is an intent. It has to be an intent, and you gave a negligence standard, so you ignored it. But it really has to be at issue, though, that the fact that it is an element, but if it's not an issue in the case, what's the harm? Well, as Judge Sutton pointed out, it wasn't an issue in Elonis either. Not on appeal to the Third Circuit. It wasn't until the Supreme Court said, maybe we shouldn't. Maybe the Supreme Court shouldn't have taken the case, but that's what you look at. Is it at issue? Would it make a difference? I mean, we don't go through the expense, the time, the money, and everything else just to have a trial for the sake of having another trial. We look at the rights. Has somebody's substantial rights been violated here? I would suggest that's not what we're asking you to do, Judge. I understand it could be a difficult, small thing to send it back. Protecting constitutional rights is never a small thing. That's the problem. And what we have here, there is a substantial right. It's only intent that separates innocent act from wrongful act. This Court has said over and over again, it's got to be conscious. The Supreme Court says it's got to be conscious. That's what they said in Elonis was, that's why you have to have an intent. And that's what's missing from this jury instruction, and that's what's missing from 875C, so you can't have a conviction based on negligence. And that's what we have right here, is a conviction based on negligence. The law was the reasonable person law, but has your client ever argued, any time, below or on appeal, ever, that he did not subjectively intend this? I would suggest that if you look at that statement when they were arguing jury facts, jury instructions, that's what he was trying to do. That's what he was trying to do? Yes, I would also ask you, Judge. That's the closest we got. I think so. And what the government says is that— I would think if he did not subjectively intend it, it would have come out somewhere along the line, even though that wasn't the legal standard. But it never did, and therefore I have trouble saying it is at issue in the case. Well, again, there is a different standard for pro se, and this man did not choose to go pro se. I know, but you still say these are the facts, this is what happened, and by the way, I never intended this. In the case— You would expect it, that's all. In the case, I think it was Mosley that the trial court cited for why he had to go pro se, that was a fellow who was a lawyer and a judge, and he still ended up with two elbow counsel. So when we look at what Mr. Houston managed— Can I just ask you, this question is a little half-baked. I think I know the answer to it, but I'm just curious. I meant to ask the government this as well. We don't have the authority to just say, throw up our hands and say, hey, we have this new decision, we don't want to decide. We want the trial court to decide everything in the first instance. In other words, we're just going to send it back. We'll let the trial court decide in the first instance whether plain error applies, harmless error applies, whether either is met. We can't really do that, right? Because we can only send it back if we vacate. I mean, if you vacate, you have to have a reason for vacating, and once you've vacated, there's nothing for the district court to do on that point because the only reason we vacate is to say it had satisfied plain error or there wasn't a forfeiture at all. Am I right about that? Well, I think you're right about that, and I think the other problem the court faces is with a conviction of 875C and the exact same jury instruction, not having been raised in aloneness on appeal, being raised for the first time in the Supreme Court, and the Supreme Court reversing the conviction and remanding, I don't know how this court, given the facts in this case, can do anything other than reverse. I'm asking a different question. You're asking? I'm asking a process question. Are we allowed, because of intervening Supreme Court authority, after a conviction and sentence to say, we're leaving it just as is, we're just remanding for the district court to decide in the first instance how to apply plain error? I don't think so. Why? Why can't we do that? I mean, I think you're probably right. I'm just not entirely sure why. Well, I think the thing is that this circuit had established, as did the Third Circuit, that the proper standard was a reasonable person, the negligence standard. So this court established that because it didn't exist in 875C. So I think this court can just as easily say, we're reversing, we're remanding, and we find that the standard in 875C is fill in the blank. And the Supreme Court may have to address that in the next case and say, no, that was wrong, let's try something different. Mr. Jennings, we can't really do that, can we? We have to either vacate or not. We vacate or we affirm. We don't just say, hey, would you guys mind giving us a little more advice down below? Yeah, that's what I thought. Okay. All right, well, thanks to both of you for your helpful briefs and arguments, including the supplemental ones, which, of course, hey, Alanis could have come out afterwards, and you should be happy about that. And so we appreciate both of your efforts. And, Mr. Whalen, I see you're court-appointed counsel, which we greatly appreciate. And I'm not sure your client does yet, but it was very good of you to do this, and it's a great service to the profession. Mr. Russo and I have no problem whatsoever. That's great. You can call me three days after I leave. That's good to hear. Maybe he's on the road to rehabilitation. I'm not here. Thanks so much. Thanks so much. The case will be submitted, and the clerk may adjourn court.